## DISTRICT OF COLUMBIA SUPERIOR COURT
## CIVIL BRANCH
500 Indiana Avenue, NW
Washington, D.C. 20001

| | |
|---|---|
| **CITIMORTGAGE, INC.**<br>c/o Morris \| Hardwick \| Schneider, LLC<br>9409 Philadelphia Road<br>Baltimore, MD 21237<br><br>           Plaintiff,<br><br>v.<br><br>**EUGENE GERARD HARRIS**<br>4220 Clay Street Northeast<br>Washington, DC 20019<br><br>AND<br><br>**UNITED STATES OF AMERICA**<br>c/o U.S. Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>           Defendant(s). | Case No.: 14 - 0 0 0 2 0 0 3<br><br>Judge Assigned:<br>Next Event:<br><br>APR 0 1 2014 |

## COMPLAINT FOR JUDICIAL FORECLOSURE

### ACTION INVOLVING REAL PROPERTY

     CitiMortgage, Inc. ("Plaintiff") by and through counsel, Mark H. Wittstadt, Gerard Wm. Wittstadt, Jr., David Chen, Patrick Jules, and Morris \| Hardwick \| Schneider, LLC, files this action seeking a judicial foreclosure, pursuant to *D.C. Code § 42-816*, and states as follows:

### PARTIES AND JURISDICTION

1.    Eugene Gerard Harris ("Eugene Gerard Harris") is the record owner of certain real

    property located at 4220 Clay Street Northeast, Washington, DC 20019, more specifically

    described as:

*8748524*

All That certain lot or parcel of land lying and being situate in the District of Columbia being more particularly described as:

Lot Numbered 84 and the West 12 ½ feet front by the full depth thereof Lot Numbered 83 in Square Numbered 5088 in a subdivision made by Joseph Swift of "Glendale", as per plat recorded in Liber 57 at folio 10 in the Office of the Surveyor for the District of Columbia.

Note: At the date hereof the above described land is known for assessment and taxation purposes as lot 84 in square 5088

(hereinafter "the Property") by virtue of a title deed, recorded with the Recorder of Deeds at Document Number 2004122898 see attached Deed, Exhibit A.

2.   The Property is located within the District of Columbia.

3.   Plaintiff is the beneficiary of a Note secured by the Property.

4.   The Court has personal jurisdiction over the Defendant herein.

5.   Venue is proper in the Superior Court of the District of Columbia.

## FACTS

6.   On August 10, 2005, Plaintiff encumbered the Property with a Deed of Trust securing a Note in the original principal amount of One Hundred Seventy-One Thousand Five Hundred and 00/100 Dollars ($171,500.00), see attached Note, Exhibit B, and Deed of Trust, Exhibit C, both of which are incorporated hereto by reference.

7.   The Deed of Trust was recorded with the Recorder of Deeds for the District of Columbia on August 26, 2005 as Document Number 2005119954.

8.   The original Lender, American Home Mortgage, assigned its rights under the Note and Deed of Trust to Plaintiff, see Exhibit D attached and incorporated hereto by reference.

9.   The Plaintiff is the current holder of the Note and beneficiary of the Deed of Trust aforesaid.

## COUNT I - Judicial Foreclosure

**Plaintiff incorporates by reference all those facts and allegations contained above.**

10.  On April 1, 2010, Eugene Gerard Harris defaulted on the Note by failing to make the required payments due and owing under the Note.

11.  On or about June 20, 2013, pursuant to the Deed of Trust, Plaintiff caused to be mailed to Eugene Gerard Harris a demand letter stating the total amount needed to cure the default, see attached Exhibit E.

12.  Eugene Gerard Harris failed to cure the default, and therefore, pursuant to the terms of the Deed of Trust, the loan was accelerated.

13.  The account is due and owing as of January 16, 2014 for the following:

| | |
|---|---|
| a. Unpaid Principal Balance | $ 171,490.05 |
| b. Interest total to 01/16/14 | $ 32,338.88 |
| c. Accumulated Late Charges | $ 2,489.64 |
| d. PD FC ATTY F&C | $ 1,285.72 |
| e. Property Preservation | $ 2,336.50 |
| f. O/S Prop. Preservation | $ 150.00 |
| g. Inspection | $ 772.00 |
| h. Escrow Advance Balance | $ 14,601.62 |
| i. Less Unapplied Funds | $ (800.02) |
| j. Utility | $155.88 |
| k. Interest on Escrow Advance | $ 561.78 |
| l. Release Fee | $ 31.50 |

|  | Total | $ 225,413.55 |
|---|---|---|

14. Interest, taxes, insurance and other elements of the debt continue to accrue daily. Costs and legal fees incurred herein may be added to the debt consistent with the Deed of Trust.

15. Department of Defense records indicate Eugene Gerard Harris is not in active military duty, see attached Exhibit F.

16. Plaintiff lawfully appointed Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr., ("the Wittstadts") as Substitute Trustees under the Deed of Trust through a Deed of Appointment of Substitute Trustees recorded with the Recorder of Deeds for the District of Columbia, see attached Exhibit G.

17. D.C. Code §42-816 permits the court to decree "that the mortgagor be foreclosed and barred from redeeming the mortgaged property."

18. Plaintiff is entitled to enforce its Deed of Trust via a judicial foreclosure of the Property.

19. D.C. Code §42-815.02, only applies to a non-judicial foreclosure proceeding under the power of sale clause of the deed of trust, which in this instant case does not apply.

20. Neither mediation nor any mediation certificate is required herein.

21. Plaintiff is willing to participate in a mediation conducted by a neutral third-party mediator if Defendant(s) appears and requests the same.

22. Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. have already been appointed as Substitute Trustees for purposes of foreclosure, and have knowledge and experience in the foreclosure field, they should be authorized to carry out the foreclosure by sending notices to affected parties and publishing advertisements consistent with the terms of the

Deed of Trust and District of Columbia Code, and thereafter selling the property at

auction subject to confirmation or ratification by this Court.

23.   Alternatively, Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. may be appointed as

Officers of the Court for purposes of selling the Property under SCR-308(b).

24.   The Plaintiff should be permitted to submit bid(s) at the sale aforesaid on credit up to the

full amount of the debt and all costs incurred under the terms of the Note and Deed of

Trust.

25.   After the foreclosure sale, the Substitute Trustees will file with the Court a Verified

Report of Sale in compliance with SCR-308(b)(4).

26.   The Trustee / Officer appointed to sell the Property is entitled to receive a Trustee's

Commission per the Deed of Trust and D.C. Code, and may request the same in the

Verified Report of Sale.

27.   Pursuant to the Deed of Trust your Plaintiff is entitled to collect all expenses incurred in

pursuing the remedies provided under the Deed of Trust, including, but not limited to

reasonable attorneys' fees, filing fees, costs of publication, costs associated with the sale,

mailing costs, and the costs of title evidence, proof of which will be submitted in the

Verified Report of Sale prior to ratification or confirmation.

**WHEREFORE**, Plaintiff prays this Honorable Court grant the following relief:

1.   That this Court find that the Defendant is in default on the mortgage obligation;

2.   That this Court Order and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. to

act as Trustee or Officer to sell the real property and improvements thereon known as

4220 Clay Street Northeast, Washington, DC 20019 at public auction and to send appropriate notices and publish advertisements for the same;

3.   That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. should be permitted to auction the Property aforesaid on a date and in a manner deemed appropriate, to continue the auction for a period not to exceed thirty (30) days without further leave of court, and enter into a contract of sale for the property which contract shall be subject to review and confirmation or ratification by this Court;

4.   That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. shall be ordered to submit a Verified Report of Sale to this Court within a reasonable time following the auction;

5.   That this Court award all appropriate commissions due to the Trustees and Auctioneer as set forth in the Deed of Trust;

6.   That this Court award the Plaintiff their reasonable attorney fees and costs incurred in the instant action;

7.   That this Court enter a deficiency judgment for any amounts remaining due on the Note following the completion of the foreclosure; and

8.   That this Court grant such further relief as may be necessary and just under the circumstances.

<u>COUNT II - Judicial Sale (Alternative)</u>

**Plaintiff incorporates by reference all those facts and allegations contained above.**

28.   To the extent that a judicial foreclosure cannot be had, D.C. Code §42-816 also permits

the Court to decree a judicial sale of the entire Property.

29.   A judicial sale would be a sale in absolute, requiring joinder of all lienholders or parties

who have an interest in the subject premises.

30.   Lienholders known at this time include:

> AFL-CIO Employees Federal Credit Union
> Serve On: 1750 New York Avenue, NW
> Washington, DC 20006


> LHR, Inc.
> Serve On: 1020 19th Street, NW
> Ste. 400
> Washington, DC 20036


> Internal Revenue Service
> Serve On: 31 Hopkins Plaza, MS 1150
> Baltimore, MD 21201


> District of Columbia Water & Sewer Authority
> Serve On: 810 First Street, N.E.
> Washington, DC 20002


31.   The inclusion of said additional party will significantly increase the time and expense of

this process to the detriment of the borrower without significant advances in justice or

equity, therefore it is not believed that this approach should be used absent title defects or other issues which would prevent a normal judicial foreclosure.

32. No title defects or other issues are known to exist at this time.

33. To the extent that a defect or issue would be discovered in the course of this action, your Plaintiff moves this Court to permit amendment of the action to include any necessary party to accomplish complete justice.

WHEREFORE, the foregoing premises considered, to the extent that a judicial foreclosure cannot be had, your Plaintiff moves this Court to permit amendment of this Complaint to join all interested parties, to order a judicial sale in satisfaction of the debt owed to Plaintiff on such terms and conditions the Court may deem appropriate under the law, to enter a deficiency

judgment should amounts remain unpaid on the Note following the sale, and to issue such other

and further direction as may be necessary to accomplish complete relief.

### Verification

I solemnly affirm under the penalties of perjury that the account information set forth above are true to the best of my knowledge, information, and belief.

AFFIANT:

BY:

*Mary E Meunier 01·21·2014*

Print: Mary E Meunier
Title: Vice President – Document Control
Employed by CitiMortgage, Inc.
Plaintiff: CitiMortgage, Inc.
Date: *January 21, 2014*

State of _Nevada_
County/City _Clark_

On this _21_ day of _January_, 2014, before me, the undersigned officer, personally appeared _Mary E. Meunier_ who is the _Vice President - Document Control_ of CitiMortgage, Inc., known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Verification and acknowledged he/she executed same in his/her capacity as _Vice President - Document Control_ for the purposes therein contained.

In witness hereof I hereunto set my hand and official seal.

_Jacqueline M. Wagner 1/21/2014_
NOTARY PUBLIC
My Commission expires: _May 25, 2016_

> JACQUELINE M. WAGNER
> Notary Public - Notary Seal
> State of Nevada
> Clark County
> Commission #12-8049-1
> My Commission Expires May 25, 2016

Respectfully submitted

Mark Wittstadt, Esq. No. 497735
Gerard Wm. Wittstadt, Jr., Esq. No. 497127
David Chen Esq. No. 1000517
Patrick R. Jules Esq. No. 1011142
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237
410-284-9600
dchen@closingsource.net
pjules@closingsource.net
Attorney for Plaintiff

DCFC - Complaint
DC-93000676-13
2013-10-10 @ 09:41:26 / BK

*8748524*

# Exhibit

# A

Doc# 2004122896

## THIS DEED

Made this 28th day of May, 2004, by and between Alphonso Jackson, Secretary of the Department of Housing and Urban Development (HUD), as agency of the United States of America, acting by and through the Federal Housing Commissioner, party of the first part ("Grantor"), and EUGENE GERARD HARRIS, party of the second part ("Grantee").

WITNESSETH, that the party of the first part for and in consideration of the sum of Eighty-Eight Thousand and 00/100 (\$88,000.00) Dollars, Lawful money of the United States of America unto his/her will and truly paid by the party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, enfeoffed released and confirmed, and by these presents doth grant, bargained, sell, enfeoff release and confirm unto the party of the second part, in fee simple, with Special Warranty of title, as SOLE OWNER, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

See LEGAL DESCRIPTION AS EXHIBIT "A", attached hereto and made a part hereof.

Being the same property conveyed by deed recorded as Instrument Number 2003046755.

Which has an address of 4220 CLAY STREET NE, WASHINGTON, DC 20019.

Being the same property acquired by the Grantor pursuant to the provisions of the National Housing Act, as amended (12 USA 1702 et.seq.) and the Department of Housing and Urban Development (79 Stat. 667).

This conveyance is made subject to the easements, conditions, restrictions, and rights-of way of record, together with the building thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging, or in anywise appertaining.

AND the said party of the first part covenants that they will warrant specially the property hereby conveyed, and that they will execute such further assurances of said land as may be requisite.

The purpose of the following covenant is, to insure that the property conveyed herein is used for homeownership and is occupied as a primary residence by a police officer in accordance with the objectives of the Grantor's Officer Next Door Sales Program. Grantee, a police officer shall own and occupy, as a primary residence, the property conveyed herein. This covenant shall be subject and subordinate to any mortgage or deed of trust created by Grantee to finance or refinance the acquisition of the property conveyed herein and shall be extinguished upon the foreclosure of such mortgage or the conveyance of the property by deed in lieu of foreclosure. The covenants and conditions contained in this paragraph shall terminate, shall be of no further effect, and shall not be enforceable on or after Saturday, November 24, 2007 or, unless terminated earlier in writing by Grantee. The acceptance of this deed by the Grantee shall constitute an acceptance of the use restrictions described in this paragraph.

a)

In Witness Whereof the undersigned has set his hand and seal as Attorney-In-Fact for and on behalf of the said Secretary of Housing and Urban Development, under authority and by virtue of Code of the Federal Regulations, Title 24, Chapter II, Part 200, Subpart D.

The Secretary of Housing and Urban Development

By: _Dale Allen_

(SEAL)

Attorney-In-Fact

Name: _____

Commonwealth of Pennsylvania }

County of _Montgomery_ }                    , TO WIT;

I a Notary Public in and for the jurisdiction aforesaid hereby certify, that on this 2 nd day of _June_ 2004, personally appeared before me, the subscriber, _Dale Allbrecht_ who is well known to me and known to be the duly appointed Attorney-In-Fact, and the person who executed the foregoing instrument bearing date first hereinbefore mentioned, by virtue of the authority vested in him by the above cited authority, and acknowledged the aforegoing deed to be his act as Attorney-In-Fact for and on behalf of _____ R. Jackson, Secretary of Housing and Urban Development.

_Beverly Federman_

Notary Public

My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Beverly Federman, Notary Public
Lower Salford Twp., Montgomery County
My Commission Expires May 10, 2006

CASE#: 060804

REMIT TO:   LEGACY TITLE & ESCROW, INC.
3331 TOLEDO TERRACE, SUITE 306
HYATTSVILLE, MD  20782

Case 1:06-1104

## Legal Description as Exhibit "A"

LOT NUMBERED EIGHTY-FOUR(84) AND THE WEST 12 1/2 FEET FRONT BY THE
FULL DEPTH THERE OF LOT NUMBERD EIGHTY-THREE(83) IN SQUARE
NUMBERED 5068 IN A SUBDIVISION MADE BY JOSEPH SWIFT OF "GLENDALE", AS
PER PLAT RECORDED IN LIBER 57 AT FOLIO 10 IN THE OFFICE OF THE
SURVEYOR FOR THE DISTRICT OF COLUMBIA.

NOTE: AT THE DATE HEREOF THE ABOVE DESCRIBED LAND IS KNOWN FOR
ASSESSMENT AND TAXATION PURPOSES AS LOT 84 IN SQUARE 5068.



L11-5-2004711768-1    L12-0-3-1

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-6374

## RE-RECORDING CERTIFICATION

**I.  Party Requesting Re-Recording**

Name   Annette / M.I. / Young
     First Name    M.I.    Last Name

Firm   First American Title Insurance Company

Address   1221 K Street, NW, Suite 200-8-1

City   Washington DC    State      Zip   20005

Day Phone   (202) 530-1300    Evening Phone

**II.  Property Description & Type of Document**

Square(s)   6568    Suffix    Lot(s)   0084, 0017

Instrument   2004122055    Recording Date

**III.  Parties to Document**

Grantor(s)   Alphonso / M.I. / Jackson
    First Name  M.I.  Last Name

Grantor(s)
    First Name  M.I.  Last Name

Grantee(s)   Eugene / G / Harris
    First Name  M.I.  Last Name

Grantee(s)
    First Name  M.I.  Last Name

Other
    First Name  M.I.  Last Name

**IV.  Reason(s) for Re-Recording**
(state specifically and include the page(s) and one(s) where change(s) occur)

This Deed is being re-recorded to add lot 0017 to the legal description.

**V.  A copy of the document before the change was made is required.**

**VI.  Certification**

I,   Annette / M.I. / Young   , hereby certify that the
statement and representations made herein are correct and true and that no changes,
modifications, or insertions have been made to the document referenced herein other
than indicated above. Furthermore, I hereby acknowledge that any false statement or
misrepresentation that I make on this form is punishable by criminal penalties under
the laws of the District of Columbia.

10/27/2008
mm/dd/yyyy

Given under my hand and seal this the  27th  day of  October, 2008

Cheryl Aviva Amatey
Notary Public, District of Columbia
My Commission Expires  5-31-20—

APPROVED
DATE  10-28-08
RECORDER OF DEEDS

Doc# 2904122690

## THIS DEED

Made this 28th day of May, 2004, by and between Alphonso Jackson, Secretary of the Department of Housing and Urban Development (HUD), as agency of the United States of America, acting by and through the Federal Housing Commissioner, party of the first part ("Grantor"), and EUGENE GERARD HARRIS, party of the second part ("Grantee").

WITNESSETH, that the party of the first part for and in consideration of the sum of Eighty-Eight Thousand and 00/100 ($88,000.00) Dollars, Lawful money of the United States of America unto him/her will and truly paid by the party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, enfeoffed released and confirmed, and by these presents doth grant, bargained, sell, enfeoff release and confirm unto the party of the second part, in fee simple, with Special Warranty of title, as SOLE OWNER, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

See LEGAL DESCRIPTION AS EXHIBIT "A", attached hereto and made a part hereof.

Being the same property conveyed by deed recorded as Instrument Number: 2004016755

which has an address of 4229 CLAY STREET NE, WASHINGTON, DC 20019.

Being the same property acquired by the Grantor pursuant to the provisions of the National Housing Act, as amended (12 USA 1702 et.seq.) and the Department of Housing and Urban Development (79 Stat. 667).

This conveyance is made subject to the easements, conditions, restrictions, and rights-of-way of record, together with the building thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging or in anywise appertaining

AND the said party of the first part covenants that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

The purpose of the following covenant is to insure that the property conveyed herein is used for homeownership and is occupied as a primary residence by a police officer in accordance with the objectives of the Grantor's Officer Next Door Sales Program. Grantee, a police officer shall own and occupy, as a primary residence, the property conveyed herein. This covenant shall be subject and subordinate to any mortgage or deed of trust entered by Grantee to finance or refinance the acquisition of the property conveyed herein and shall be extinguished upon the foreclosure of such mortgage or the conveyance of the property by deed in lieu of foreclosure. The covenants and conditions contained in this paragraph shall terminate, shall be of no further effect, and shall not be enforceable on or after Saturday, November 24, 2007 or unless terminated earlier in writing by Grantor. The acceptance of this deed by the Grantee shall constitute an acceptance of the use restrictions described in this paragraph.

In Witness Whereof the undersigned has set his hand and seal as Attorney-in-Fact for and on behalf of the said Secretary of Housing and Urban Development, under authority vested by virtue of Code of the Federal Regulations, Title 24, Chapter 11, Part 200, Subpart D.

The Secretary of Housing and Urban Development

By _Clark Allen_
(SEAL)                Attorney-in-Fact

Name: _____

Commonwealth of Pennsylvania         }
                                     }
County of _Montgomery_               }    , TO WIT:

I a Notary Public in and for the jurisdiction aforesaid hereby certify, that on this __2nd__ day of __June__, __2011__, personally appeared before me, the subscriber, _Clark Albert__, who is well known to me and known to be the duly appointed Attorney-in-Fact, and the person who executed the foregoing instrument bearing date first hereinbefore mentioned, by virtue of the authority vested in him by the above cited authority, and acknowledged the aforegoing deed to be his act as Attorney-in-Fact for and on behalf of _____ B. Jackson, Secretary of Housing and Urban Development.

_Beverly Soderman_
Notary Public
My commission expires:

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Beverly Soderman, Notary Public
_____, Montgomery County
My Commission Expires May 18, 2015

CASE#: 366924

RETURN TO:   LEGACY TITLE & ESCROW, INC.
             3351 TOLEDO TERRACE, SUITE 305
             HYATTSVILLE, MD 20782

Legal Description as Exhibit "A"

LOT NUMBERED EIGHTY-FOUR(84) AND THE WEST 12 1/2 FEET FRONT BY THE
FULL DEPTH THERE OF LOT NUMBERD EIGHTY-THREE(83) IN SQUARE
NUMBERED 5018 IN A SUBDIVISION MADE BY JOSEPH SWIFT OF "GLENDALE", AS
PER PLAT RECORDED IN LIBER 51 AT FOLIO 10 IN THE OFFICE OF THE
SURVEYOR FOR THE DISTRICT OF COLUMBIA.

NOTE: AT THE DATE HEREOF THE ABOVE DESCRIBED LAND IS KNOWN FOR
ASSESSMENT AND TAXATION PURPOSES AS LOT 84 IN SQUARE 5018.

Doca 3988111796 Fees:\$41.68
19/28/2808   19:30AM Pages 6
Filed & Recorded in Official Records of
OAKH DC RECORDER OF DEEDS LARRY 1000

RECORDING
SURCHARGE                 |        41.00
                                   6.58

RE-RECORDING CERTIFICATION

Government of the
District of Columbia
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

**I. Party Requesting Re-Recording**

Name: IDA | | WILLIAMS

Firm: FIRST AMERICAN TITLE INSURANCE CO.

Address: 1801 K Street NW, Suite 200K-7

City: WASHINGTON State: DC Zip: 20006

Day Phone: (202) 530-1200 Evening Phone:

**II. Property Description & Type of Document**

Square(s): 5098 Suffix: Lot(s): 817

Instrument: 2004126098 Recording Date: 11/01/2004

**III. Parties to Document**

Grantor(s): ALPHONSO JACKSON

Grantor(s):

Grantee(s): EUGENE GERARD HARRIS

Grantee(s):

Other:

**IV. Reason(s) for Re-Recording**

THE DEED IS BEING RE-RECORDED TO ADD LOT 817 WHICH WAS
ERRONEOUSLY OMITTED FROM PREVIOUS DEED.

**V.** A copy of the document before the change was made is required.

**VI. Certification**

I, IDA | WILLIAMS hereby certify that the
statement and representation made herein are correct and true and that no changes,
modifications, or insertions have been made to the document referenced herein other
than indicated above. Furthermore, I hereby acknowledge that any false statement or
misrepresentation that I make on this form is punishable by criminal penalties under
the laws of the District of Columbia.

01/13/2009

Given under my hand and seal this the 13th day of _____ 2009

My commission expires 3-31-09

Doc# 2004122896

### THIS DEED

Made this 21st day of May, 2004, by and between Alphonso Jackson, Secretary of the Department of Housing and Urban Development (HUD), an agency of the United States of America, acting by and through the Federal Housing Commissioner, party of the first part ("Grantor"), and EUGENE GERARD HARRIS, party of the second part ("Grantee").

WITNESSETH, that the party of the first part for and in consideration of the sum of Eighty-Eight Thousand and 00/100 ($88,000.00) Dollars, Lawful money of the United States of America unto him/her will and truly paid by the party of the second part at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, aliened, enfeoffed released and confirmed, and by these presents doth grant, bargained, sell, enfeoff release and confirm unto the party of the second part, in fee simple, with Special Warranty of title, as SOLE OWNER, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

See LEGAL DESCRIPTION AS EXHIBIT "A", attached hereto and made a part hereof.

Being the same property conveyed by deed recorded as Instrument Number 2004046755 which has an address of 4220 CLAY STREET NE, WASHINGTON, DC 20019.

Being the same property acquired by the Grantor pursuant to the provisions of the National Housing Act, as amended (12 USA 1702 et.seq.) and the Department of Housing and Urban Development (79 Stat. 687).

This conveyance is made subject to the easements , conditions, restrictions, and rights-of way of record, together with the building thereupon, and the rights, alleys, ways, waters, privileges, appurtenances and advantages thereto belonging or in anywise appertaining

AND the said party of the first part covenants that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

The purpose of the following covenant is to insure that the property conveyed herein is used for homeownership and is occupied as a primary residence by a police officer in accordance with objectives of the Grantor's Officer Next Door Sales Program. Grantee, a police officer shall own and occupy, as a primary residence, the property conveyed herein. This covenant shall be subject and subordinate to any mortgage or deed of trust exerted by Grantee to finance or refinance the acquisition of the property conveyed herein and shall be extinguished upon the foreclosure of such mortgage or the conveyance of the property by deed in lieu of foreclosure. The covenants and conditions contained in this paragraph shall terminate, shall be of no further effect, and shall not be enforceable on or after Saturday, November 24, 2007 or unless terminated earlier in writing by Grantor. The acceptance of this deed by the Grantee shall constitute an acceptance of the use restrictions described in this paragraph.

e)

In Witness Whereof the undersigned has set his hand and seal as Attorney-in-Fact for and on behalf of the said Secretary of Housing and Urban Development, under authority and by virtue of Code of the Federal Regulations, Title 24, Chapter II, Part 200, Subpart D.

The Secretary of Housing and Urban Development

By: _Alan Albro_

(SEAL)                    Attorney-in-Fact

Name: _____

Commonwealth of Pennsylvania            )

County of _Montgomery_ _____ ),  TO WIT;

I a Notary Public in and for the jurisdiction aforesaid hereby certify, that on this _2 ᵗʰ_ day of _June_ ____, _2014_, personally appeared before me, the subscriber, _Dale Atherholt_, who is well known to me and known to be the duly appointed Attorney-in-Fact, and the person who executed the foregoing instrument bearing date first hereinbefore mentioned, by virtue of the authority vested in him by the above cited authority, and acknowledged the aforegoing deed to be his act as Attorney-in-Fact for and on behalf of Shaun R. Jackson, Secretary of Housing and Urban Development.

_Beverly Federman_

Notary Public

My commission expires: _____

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Beverly Federman, Notary Public
Lower Salford Twp., Montgomery County
My Commission Expires May 13, 2018

CASE#: 069804

REMIT TO:   LEGACY TITLE & ESCROW, INC..
            3331 TOLEDO TERRACE, SUITE 306
            HYATTSVILLE, MD 20782

Case 1:005154

Legal Description as Exhibit "A"

LOT NUMBERED EIGHTY-FOUR(84) AND THE WEST 12 1/2 FEET FRONT BY THE
FULL DEPTH THERE OF LOT NUMBERED EIGHTY-THREE(83) IN SQUARE
NUMBERED 5088 IN A SUBDIVISION MADE BY JOSEPH SWIFT OF "GLENDALE", AS
PER PLAT RECORDED IN LIBER 57 AT FOLIO 10 IN THE OFFICE OF THE
SURVEYOR FOR THE DISTRICT OF COLUMBIA.

NOTE: AT THE DATE HEREOF THE ABOVE DESCRIBED LAND IS KNOWN FOR
ASSESSMENT AND TAXATION PURPOSES AS LOT 84 IN SQUARE 5088.

NOTE: AT THE DATE HEREOF THE ABOVE DESCRIBED LAND IS KNOWN FOR
ASSESSMENT AND TAXATION PURPOSES AS LOT 84 AND LOT 817 IN SQUARE 5088.

Doc# 2008083406 Fee:$47.50
01/14/2008    10:41AM Pages 5
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING              1      41.00
SURCHARGE              5       8.50

# Exhibit

# B

# InterestFirst℠ ADJUSTABLE RATE NOTE
( One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

August 10, 2005                          Washington                          DC
   [Date]                                 [City]                              [State]

4220 Clay Street NE, Washington, DC  20019
   [Property Address]

1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 171,500.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   American Home Mortgage

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.625 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on   October 1, 2005   . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on September 1, 2035   , I still owe amounts under this Note, I will pay these amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ 803.91   before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

DOC #:133391                                        APPL #:0000035153
MULTISTATE InterestFirst   ADJUSTABLE RATE NOTE - WSJ ONE-YEAR LIBOR INDEX - Single Family - Fannie Mae Uniform Instrument

-1790N (0404)            Form 3550  11/01
Page 1 of 2                                      Initials: ___

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of  September,
2012                 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.
The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable
interest rate could change, is called a "Change Date."
   (B) The Index
   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The
Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the
"Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.
The Note Holder will give me notice of this choice.
   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and One Half
                        percentage points (                        2.500  %) to the Current Index. The Note Holder will
then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in
Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid
principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal
payments. The result of this calculation will be the new amount of my monthly payment.
   (D) Limits on Interest Rate Changes
   The interest rate I am required to pay at the first Change Date will not be greater than
than                        2.500  %. Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12
months. My interest rate will never be greater than                        10.625%.
   (E) Effective Date of Changes
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment
beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
   (F) Notice of Changes
   Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail
to me a notice of such change. The notice will include information required by law to be given to me and also the title and
telephone number of a person who will answer any question I may have regarding the notice.
   (G) Date of First Principal and Interest Payment
   The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest
Payment Due Date") shall be the first monthly payment date after the first Change Date.
5.   BORROWER'S RIGHT TO PREPAY
   I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under this Note.
   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use
my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment
unless the Note Holder agrees in writing to these changes. If the partial Prepayment is made during the period when my
monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when
my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of
principal and interest, any partial Prepayment may reduce the amount of my monthly payments after the first Change Date
following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate
increase.
6.   LOAN CHARGES
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other
loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge
from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund

DOC #:133762                                        APPL #:0086726357
                                                            Page 3 of 5                        Form 3530 1 (01)
                                                                                                Initials: ___

by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5 .000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

DOC  #:1131253

GMPL #:0006952259

1708 (0510)                                    Page 3 of 5                                    Form 3528 3/04



Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Eugene Gerard Harris_ _____ (Seal)        _____ (Seal)
Eugene Gerard Harris              -Borrower                                      -Borrower

_____ (Seal)                        _____ (Seal)
                         -Borrower                                              -Borrower

_____ (Seal)                        _____ (Seal)
                         -Borrower                                              -Borrower

_____ (Seal)                        _____ (Seal)
                         -Borrower                                              -Borrower

PAY TO THE ORDER OF                                    [Sign Original Only]

CITIMORTGAGE, INC.

WITHOUT RECOURSE
OR REPRESENTATIONS CITIMORTGAGE                        Pay to the order of
SAM BILLARD
ASSET SPECIALIST
                                                       without recourse on us CitiMortgage, Inc.

                                                       Janet L. Sims, Vice President
                                                       CitiMortgage, Inc.

DOC #:333705
MERS-170N (0510)                   APPL #:0000025157
                                          Page 3 of 3

                                                       Form 3536  11/01

# Exhibit

# C

Return To:
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747

Please return to:
Answer Title
10 G Street, NE, Suite 410
Washington, DC 20002

Prepared By:
Tommy Kennard
7114 Columbia Gateway Drive
Columbia, MD
21046

DC-HARRIS-R378 [Space Above This Line For Recording Data]

1ST American

DEED OF TRUST

Refinance MIN 100024200009251576

.T1-5-2005119954-1

.T2-8-0-21

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated August 16, 2005
together with all Riders to this document.
(B) "Borrower" is Eugene Gerard Harris, A single person

Borrower's address is 4220 Clay St NE, Washington, DC 20019
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is American Home Mortgage

Lender is a Corporation
organized and existing under the laws of State of New York

DISTRICT OF COLUMBIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS



-6A(DC) (021)
Page 1 of 15

Form 3009 1/01

VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 520 BROADHOLLOW ROAD, MELVILLE, NY  11747

(D) "Trustee" is Alvin E Friedman

Trustee's address is 7142 Columbia Gateway Dr., Columbia, MD 21046

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated August 16, 2005
The Note states that Borrower owes Lender One Hundred Seventy One Thousand Five Hundred and No/100
(U.S. $ 171,500.00                  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     September 1, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                     ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:321322
6A(DC) (0506)                        APPL #:0000925157
                                     Page 2 of 15          Initials: ____

                                                           Form 3029  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
See attached Schedule "A"

Parcel ID Number:  5608/0004                                    which currently has the address of
4220 Clay Street NE                                                                            [Street]
Washington, District of Columbia  20019        [Zip Code] ("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC  #:321333                       APPL #:0000323157                    Initials: _____

MERS  -6A(DC)  (0307)                       Page 2 of 12                    Form 3009  1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

DOC  #:221324

—6A(WI) (0010)                APPL #:0000825155

Form 3050   1/01

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

DOC  1:321326                          APPL 1:8000523157

(logo) 44(DC) (0205)              Page 6 of 14                 (initials)                Form 3009  1/01

proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien

DOC #:332:325                    APPL #:0060929157

GB2-6(DC) (0806)                      Page 7 of 13                    Initials: _____          Form 3009  1/01

which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DOC  #:221324
APPL #:0008925157
-6A(DC)  (0404)                                        Page 9 of 16        Initials: ____        Form 3000  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC  #:321330C                    APPL #:9209025955

-6A(DC) (0809)                    Page 10 of 15                    Initials: _____

Form 3009  1/01

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

DOC  #:321331

APPL #:0000975157

-6A(DC) (0811)

Page 11 of 12

Form 3009  1/01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:371332           APPL #:0000905157

-6A(DC) (0005)                   Page 12 of 15                        Form 3009  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees and of          5.0 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument, but only if the recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

DOC #:221333                    APPL #:0050925157

GRD -6A(DC) (0005)              Page 13 of 15          Initials DWH          Form 3009   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
                                          -Borrower

Eugene Oscard Harris
4220 Clay St NE
Washington, DC   20019
                                          (Address)

_____ (Seal)
                                          -Borrower

                                          (Address)

_____ (Seal)           _____ (Seal)
                       -Borrower                                 -Borrower

    (Address)                                 (Address)

_____ (Seal)           _____ (Seal)
                       -Borrower                                 -Borrower

    (Address)                                 (Address)

_____ (Seal)           _____ (Seal)
                       -Borrower                                 -Borrower

    (Address)                                 (Address)

* Signs as "borrower" solely for the purpose of waiving homestead rights.

LOC 1:321334

APPL 1:7030925137

Page 14 of 15

Form 3009   1/01

Maryland                    Prince Georges
~~DISTRICT OF COLUMBIA,~~ ss: ~~DISTRICT OF COLUMBIA~~

I,                                                    , a Notary Public in and for the District
of Columbia, do hereby certify that   Eugene Gerard Harris

personally known to me as the person(s) who executed the foregoing instrument bearing date of    16th
day of    August, 2005         , personally appeared before me in said District and acknowledged said
instrument to be his/her/their act and deed, and that he/she/they executed said instrument for the purposes
therein contained.

Witness my hand and official seal this  8/16/05      day of

Notary Public, D.C.
(Seal)
Sunday M. Erbin
Notary Public State of Maryland
My Commission Expires October 4, 2008

Lender Name and Address:
American Home Mortgage
520 BROADHOLLOW ROAD
MELVILLE, NY 11747

Trustee Name and Address:
Alvin E Friedman
7142 Columbia Gateway Dr.
Columbia, MD 21046

DOC  #:321335              APPL #:0000925157                        Form 3009  1/01
(GR-64(DC) (000)                    Page 15 of 15

# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In The Wall Street Journal)- Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this 15th   day of August, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Fixed/Adjustable Rate Note (the "Note") to American Home Mortgage

("Lender") of the same date and covering the property described in the Security Instrument and located at:
4220 Clay Street NE, Washington, DC  20019

[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED
INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE
LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE
BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of                                5.625 %. The Note also
provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of
September, 2012                     , and the adjustable interest rate I will pay may change on that
day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable
interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."
DOC #:332061
APPL #:0000925157
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR- Single Family -
Fannie Mae Uniform Instrument

 Form 3187 6/01
Page 1 of 4          Initials: CBJ       UM31 0108
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and One Half percentage points ( 2.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.625 % or less than 2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.625%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

DOC  1:332062                          APPL  1:0000925757

Initials: ____

Page 2 of 4                          Form 3187 6/01

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

DOC #:332063          APPL #:0000925157

[logo] 168R (0106)                    Page 3 of 4                  Initials: [signature]        Form 3187 6/01

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
Eugene Gerard Harris                    -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

DOC #:332064          APPL #:0000925157
843R (0108)                  Page 4 of 4

Form 3187 6/01

## EXHIBIT A
### LEGAL DESCRIPTION

All that certain lot or parcel of land lying and being situate in the District of Columbia being more particularly described as:

Lot numbered 84 and the West 12 1/2 feet from by the full depth thereof Lot numbered 83 in square numbered 5088 in a subdivision made by Joseph Swift et "Glendale's, as per plat recorded in Liber 57 at folio 10 in the Office of the Surveyor for the District of Columbia.

Being the same property conveyed by Deed recorded May 28, 2004 in Instrument number 2004122898 from Alphonso Jackson, Secretary of HUD to Eugene Gerard Harris.

Property Address 3220 Clay Street, NE Washington, DC 20019

Tax ID: Sq. 5088 Lot 0084



★ ★ ★

Government of the
District of Columbia
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

**SECURITY AFFIDAVIT — CLASS 1**

| 5088 | | 00B4 |
|------|--------|-----|
| Square | Suffix | Lot |

I, (We) Eugene Gerard Harris _____ the owner(s) of the real property
described within certify, subject to criminal penalties for making false statements pursuant to
section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective
December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described
within is Class 1 Property, as that class of property established pursuant to D.C. Official Code
47-813(C-6)(2).

Signature

Signature

Subscribed and sworn to me before this [16th] day of [August], 200[5].

Notary Public

Sunday M. Smith
Notary Public State of Maryland
My Commission Expires October 4, 2006

My Commission Expires:

mmddyyyy

Doc# 2005119954 Fees:$180.50
10/26/2005   7:54AM Pages 21
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

                                    155.00
                                      6.50

RECORDING
SURCHARGE

# Exhibit

# D

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE, CA 91209-9071
Phone #: 800-331-3282

Prepared By:
CITIMORTGAGE, INC
AUDRA EHLOW
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

## ASSIGNMENT OF DEED OF TRUST

MERS SIS # 888-679-6377 MIN: 100024200000261576

Assignor: Mortgage Electronic Registration Systems, Inc. as nominee for American Home Mortgage

Assignee: CitiMortgage, Inc.

For Valuable Consideration the receipt of which is hereby acknowledged, the Assignor, Mortgage Electronic Registration Systems, Inc. as nominee for American Home Mortgage, hereby assigns and transfers the following described Deed of Trust onto the Assignee:

Deed of Trust from Eugene Gerard Harris to Alvin E Friedman, as trustee, for the benefit of Original Beneficiary: Mortgage Electronic Registration Systems, Inc. as nominee for American Home Mortgage, dated 08/18/2005 recorded among the Land Records of District of Columbia, in Instrument No: 2005110954, covering the property described on Attachment A.

Square No: 5088 Lot: 0084

Description/Additional Information:
See Exhibit A
Property Address: 4720 Clay Street NE, Washington, DC, 20019
Date: ___5/2/13___

Mortgage Electronic Registration Systems, Inc. as nominee for American Home Mortgage



By: Audra K. Ehlow
Assistant Secretary

STATE OF MISSOURI, ST. CHARLES COUNTY

On ___5/2/13___ before me, the undersigned, a notary public in and for said state, personally appeared Audra K. Ehlow, Assistant Secretary of Mortgage Electronic Registration Systems, Inc. as nominee for American Home Mortgage personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

GERALDINE ANN BIELINSKI
Notary Public - Notary Seal
State of Missouri
Commissioned for St Charles County
My Commission Expires: April 25, 2016
Commission Number: 12537810

Notary Public Geraldine Ann Bielinski
Commission Expires: 04/25/2016

Exhibit A

All that certain lot or parcel of land lying and being situate in the District of Columbia being
more particularly described as:

Lot numbered 84 and the West 12 1/2 feet front by the full depth thereof Lot numbered 83 in
square numbered 5088 in a subdivision made by Joseph Swift of "Glendale", as per plat recorded
in Liber 57 at folio 10 in the Office of the Surveyor for the District of Columbia.

Being the same property conveyed by Deed recorded May 28, 2004 in instrument number
2004122858 from Alphonso Jackson, Secretary of HUD to Eugene Gerard Harris.

Property Address 4220 Clay Street, NE Washington, DC 20019

Tax ID: Sq. 5088 Lot 0084

# Exhibit

# E

CitiMortgage, Inc.
PO BOX 790005
St. Louis MO 63179-0005

**CitiMortgage**



www.citimortgage.com

06/20/2013



EUGENE G HARRIS
4220 CLAY STREET NE
WASHINGTON DC 20019

RE: Property Address:       4220 CLAY STREET NE
                            WASHINGTON DC 20019
    CitiMortgage Loan #:    XXXXXX2132
    Security Instrument Dated:   08/16/05

Dear CitiMortgage Customer(s):

THE ABOVE REFERENCED LOAN IS IN DEFAULT. Payments have not been made as required by the note and mortgage or deed of trust (the "Security Instrument"). Refer to the note and Security Instrument for additional information. CitiMortgage, Inc. is providing this notice as lender or servicing agent for the lender. If you have filed bankruptcy, this notice is provided to you for compliance and informational purposes and is not an attempt to collect a debt from you (deficiency or otherwise) or in any way violate the provisions of the United States Bankruptcy Code.

To cure the default you must pay the past due amount of $49,444.30, including $2,221.11 in late charges and $2,750.57 in delinquency related expenses. We must receive your payment by 07/25/13 (or the next business day thereafter if 07/25/13 is a Saturday, Sunday, or Federal holiday). Any additional monthly payments and late charges that fall due by 07/25/13 must also be paid to bring your account current. Please send your payment to:

        CitiMortgage, Inc.
        P.O. Box 183040
        Columbus, OH 43218-3040

Failure to cure the default by 07/25/13 may result in the acceleration of all sums due under the Security Instrument. This means the entire unpaid balance will become due. Also, your property may be sold in accordance with the terms of the Security Instrument and applicable law. The Security Instrument entitles us to collect all expenses incurred in pursuing our remedies.

You have the right to reinstate your loan after acceleration in accordance with the terms of the Security Instrument. You have the right to bring a court action or to assert in any foreclosure proceeding, the non-existence of a default or any other defense you have to acceleration and the sale of the property.

Under Internal Revenue Service (IRS) regulations, we may be required to report any foreclosure to the IRS. The foreclosure may result in income tax consequences to you. Consult the IRS or your tax advisor for further information.

 © 2013 CitiMortgage, Inc. CitiMortgage, Inc. does business as CitiCorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

DO1REP030

Page 7 of 7

06/20/2013

2132

You may be eligible for homeownership counseling from one of the Department of Housing and Urban Development ("HUD") approved homeownership counseling agencies. Please call us at 1-800-723-7906* (Monday through Friday 7 AM-11 PM CST, Saturday 7 AM-4 PM CST, and Sunday 7 AM-7 PM CST) for information regarding the HUD-approved homeownership counseling agency nearest you or to discuss the circumstances of the default with one of our loan counselors. TTY Services are also available. To access: Dial 711 from the United States or Dial 1-866-280-2050 from Puerto Rico. When you call or write to us, please refer to your loan number: 0012262132.

Are you concerned with how we've handled your account? Have you recently been declined for a modification or a short sale and disagree with our decision? Call us at 1-877-435-3314* (Monday through Friday 7 AM-11 PM CST, Saturday and Sunday 7 AM-7 PM CST) or email us at: eru_support@citi.com**. You may also contact us via mail at: CitiMortgage, Inc., P.O. Box 6243, Sioux Falls, SD 57117-6243.

Sincerely,

Collection Department
CitiMortgage, Inc.

*Calls are randomly monitored and recorded to ensure quality service.

**If contacting CitiMortgage through email, please do not include confidential information.

This is an attempt to collect a debt, and any information obtained will be used for that purpose.

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

CitiMortgage, Inc.
PO BOX 790005
St. Louis MO 63179-0005

CitiMortgage



www.citimortgage.com

06/20/2013

0000211068 10Z 171 00100010 AN3   1:5
|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

EUGENE G HARRIS
1226 44TH ST NE
WASHINGTON DC 20019-1974

RE: Property Address:        4220 CLAY STREET NE
                             WASHINGTON DC 20019
    CitiMortgage Loan #:         2132
    Security Instrument Dated:  08/16/05

Dear CitiMortgage Customer(s):

THE ABOVE REFERENCED LOAN IS IN DEFAULT. Payments have not been made as required by the note and
mortgage or deed of trust (the "Security Instrument"). Refer to the note and Security Instrument for additional
information. CitiMortgage, Inc. is providing this notice as lender or servicing agent for the lender. If you have filed
bankruptcy, this notice is provided to you for compliance and informational purposes and is not an attempt to
collect a debt from you (deficiency or otherwise) or in any way violate the provisions of the United States
Bankruptcy Code.

To cure the default you must pay the past due amount of $49,444.30, including $2,221.11 in late charges and
$2,750.57 in delinquency related expenses. We must receive your payment by 07/25/13 (or the next business
day thereafter if 07/25/13 is a Saturday, Sunday, or Federal holiday). Any additional monthly payments and late
charges that fall due by 07/25/13 must also be paid to bring your account current. Please send your payment to:

          CitiMortgage, Inc.
          P.O. Box 183040
          Columbus, OH 43218-3040

Failure to cure the default by 07/25/13 may result in the acceleration of all sums due under the Security
Instrument. This means the entire unpaid balance will become due. Also, your property may be sold in accordance
with the terms of the Security Instrument and applicable law. The Security Instrument entitles us to collect all
expenses incurred in pursuing our remedies.

You have the right to reinstate your loan after acceleration in accordance with the terms of the Security
Instrument. You have the right to bring a court action or to assert in any foreclosure proceeding, the
non-existence of a default or any other defense you have to acceleration and the sale of the property.

     Under Internal Revenue Service (IRS) regulations, we may be required to report any foreclosure to the
     IRS. The foreclosure may result in income tax consequences to you. Consult the IRS or your tax advisor
     for further information.



© 2013 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and
Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any
information obtained will be used for that purpose.

DG1REM030

Page 2 of 3

06/20/2013

2132

You may be eligible for homeownership counseling from one of the Department of Housing and Urban Development ("HUD") approved homeownership counseling agencies. Please call us at 1-800-723-7906* (Monday through Friday 7 AM-11 PM CST, Saturday 7 AM-4 PM CST, and Sunday 7 AM-7 PM CST) for information regarding the HUD-approved homeownership counseling agency nearest you or to discuss the circumstances of the default with one of our loan counselors. TTY Services are also available. To access: Dial 711 from the United States or Dial 1-866-280-2050 from Puerto Rico. When you call or write to us, please refer to your loan number: 0012262132.

Are you concerned with how we've handled your account? Have you recently been declined for a modification or a short sale and disagree with our decision? Call us at 1-877-435-3314* (Monday through Friday 7 AM-11 PM CST, Saturday and Sunday 7 AM-7 PM CST) or email us at: eru_support@citi.com**. You may also contact us via mail at: CitiMortgage, Inc., P.O. Box 6243, Sioux Falls, SD 57117-6243.

Sincerely,

Collection Department
CitiMortgage, Inc.

*Calls are randomly monitored and recorded to ensure quality service.

**If contacting CitiMortgage through email, please do not include confidential information.

This is an attempt to collect a debt, and any information obtained will be used for that purpose.

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

# Exhibit

# F

Department of Defense Manpower Data Center

Results as of : Oct-10-2013 07:12:44
SCRA 3.0



Status Report
Pursuant to Servicemembers Civil Relief Act

Last Name: HARRIS
First Name: EUGENE
Middle Name:
Active Duty Status As Of: Oct-10-2013

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects the individuals' active duty status based on the Active Duty Status Date

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |

This response reflects whether the individual or his/her unit has received early notification to report for active duty

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defensellink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More Information on "Active Duty Status"
Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided

Certificate ID: 05NFU000L054X10

# Exhibit

# G

Return to:
Wittstadt & Winstadt, P.A.
6 B Nashua Court
Baltimore, Maryland 21221

DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEES

This Deed of Appointment of Substitute Trustees made this 9th day of September 2008 by CitiMortgage, Inc. who hereby designate and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. as Substitute Trustees in the place and stead of Alvin E. Friedman as Trustees.

WHEREAS, under a certain Deed of Trust, dated August 16, 2005 and recorded among the Land Records of Washington, DC, in Instrument Number 11995 the hereinafter described property was conveyed to Alvin E. Friedman as Trustees, to secure a Note of even date therewith, in the amount of $171,500.00 executed by Eugene Gerard Harris and  on the following secured property, to wit:

FOR LEGAL DESCRIPTION SEE ATTACHED EXHIBIT A

WHEREAS, the Deed of Trust provides that the Noteholders shall have the right and power to substitute one or more of the Trustees in place of the original Trustees named in the said Deed of Trust.

NOW, THEREFORE, CitiMortgage, Inc., the current holder(s) of the Note described herein and secured by the aforesaid Deed of Trust and in exercise of the powers contained in the said Deed of Trust do hereby nominate, designate and appoint MARK H. WITTSTADT and GERARD WM. WITTSTADT, JR as substitute trustees in the place and stead of Alvin E. Friedman with all powers, rights, duties and authority of the superseded Trustees.



WITNESS the hands and seals of the said Noteholders.

ATTEST:                                    CitiMortgage, Inc.

_____                  _____
Witness: _____ L. Russelburg               Kim Kirkpatrick, Assistant Vice President

State of Missouri

City/County Saint Charles

On this 7th day of September 2008, before me, the undersigned officer, personally
appeared Kim Kirkpatrick who is the Assistant Vice President of CitiMortgage, Inc. the agent
and attorney in fact for CitiMortgage, Inc. (Noteholder), known to me (or satisfactorily
proven) to be the person whose name is subscribed to the within Deed of Appointment
of Substitute Trustees and acknowledged he/she executed same in his/her capacity as
Assistant Vice President for the purpose therein contained.

In Witness hereof I hereunto set my hand and official seal.

_____
NOTARY PUBLIC

My Commission expires:

EXHIBIT A

All that certain lot or parcel of land lying and being situate in the
District of Columbia being more particularly described as:

Lot numbered 84 and the West 12 ½ feet front by the full depth thereof
Lot numbered 83 in square numbered 5088 in a subdivision made by
Joseph Swift of "Glendale", as per plat recorded in Liber 57 at folio 10
in the Office of the Surveyor for the District of Columbia.

Being the same property conveyed by Deed recorded May 28, 2004 in
instrument number 2004122898 from Jackson, Secretary of HUD to
Eugene Gerard Harris.

Property Address 4220 Clay Street, NE Washington, DC 20019

Tax ID: Sq. 5088 Lot 0084

Doc# 2004141366 fees:122.50
09/26/2006   1:35PM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING         $      27.00
SURCHARGE         $       6.50